32 So.3d 319 (2010)
Derek VAN MARTIN, Plaintiff-Appellee
v.
Anna Frederick MARTIN, Defendant-Appellant.
No. 45,007-CA.
Court of Appeal of Louisiana, Second Circuit.
March 3, 2010.
Opinion on Rehearing April 9, 2010.
*320 Culpepper & Carroll, PLLC by: Bobby L. Culpepper, for Appellant.
Murchison And Murchison, L.L.C. by: Robert C. Owsley, for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
WILLIAMS, J.
The defendant, Anna Martin, appeals a judgment in favor of the plaintiff, Derek Martin. The trial court denied Anna Martin's petition for final periodic support, finding her at fault in the breakup of the marriage. For the following reasons, we affirm in part, reverse in part and render.

FACTS
Derek and Anna Martin were married in February 2004 and established their marital domicile in Winn Parish. One child was born of the marriage. Derek filed a petition for divorce on February 21, 2008. However, he did not inform his wife of the petition and they continued living together until February 25, 2008, when he left the marital home and she was served with notice. After a hearing, the trial court ordered Derek to pay child support of $450 and interim spousal support of $850 per month.
Subsequently, Anna filed a petition seeking final periodic support and Derek responded with a rule for final divorce, termination of interim spousal support and a determination of fault. After a hearing, the trial court issued written reasons for judgment finding that Anna verbally abused her step-daughter and was at fault in the termination of the marriage. The court rendered judgment granting a divorce between the parties and denying final periodic support. Anna Martin appeals the judgment.

DISCUSSION
In several assignments of error, Anna Martin contends the trial court erred in finding that she was at fault in the breakup of the marriage. She argues that her treatment and discipline of the husband's daughter from a former marriage did not constitute sufficient fault so as to preclude an award of final periodic support.
In a proceeding for divorce, the court may award final periodic support to a party who is need of support and who is free from fault prior to the filing of an action to terminate the marriage. LSA-C.C. art. 111. A spouse seeking final periodic support must be without fault and the burden of proof is upon the claimant. Jones v. Jones, 35,502 (La.App.2d Cir.12/5/01), 804 So.2d 161. Legal fault consists of serious misconduct that rises to *321 the level of one of the previously existing fault grounds for legal separation or divorce. Legal fault includes adultery, conviction of a felony, habitual intemperance, cruel treatment or abandonment. Jenkins v. Jenkins, 38,873 (La.App.2d Cir.9/22/04), 882 So.2d 705; Lyons v. Lyons, 33,237 (La.App.2d Cir.10/10/00), 768 So.2d 853.
A spouse who petitions for permanent support need not be totally blameless in the marital discord. Only misconduct of a serious nature, providing an independent contributory cause of the breakup, equates to legal fault. Jenkins, supra; Jones, supra. While mere bickering and fussing cannot constitute cruel treatment for purposes of denying final periodic support, a continued pattern of mental harassment, nagging and griping by one spouse directed at the other can constitute cruel treatment. Jones, supra; Lyons, supra. The trial court's finding of fact on the issue of fault will not be disturbed unless manifestly erroneous. Jones, supra.
In the present case, Derek Martin testified that after filing a petition for divorce he continued to live with his wife for a number of days and did not inform her of his action before he left the marital home and she was served with notice. Derek stated that Anna did not abandon the marriage, commit adultery or remain habitually intoxicated. He acknowledged that Anna was not verbally or physically abusive toward him.
Derek testified that he filed for divorce because Anna was mean and abusive to C.M., his minor daughter from a prior marriage. As an example of poor treatment, he stated that Anna once refused to say something positive about C.M. despite his request. Derek testified that he decided to move C.M. into his parents' home because of Anna's treatment of his daughter. However, Derek stated that he likely would not have remained in the marriage even if Anna and C.M. had a better relationship. Derek testified that as a means of discipline he had sometimes whipped C.M. with a belt and had also whipped Anna's children with a belt or switch. Derek stated that he and Anna had discussed attending family counseling, but he made the decision not to go because he did not think it would work.
Anna Martin testified that she worked as a teacher and was the primary caregiver for her five children from a previous marriage, C.M. and the parties' son. Anna stated that C.M. seemed to have emotional problems and that it was very hard to communicate with her. Anna testified that she argued with C.M. when the child did not take a bath for more than a week or did not place her clothes in the laundry room. Anna stated that she told Derek she needed help in interacting with C.M. and suggested they go to family counseling, but he never agreed to attend. Anna testified that she did not agree with Derek's decision to send C.M. to his mother's house and told him several times that the girl needed to return home so they could address the situation themselves. Anna stated that she was the person who responded to the phone calls concerning C.M.'s behavioral problems at school. Anna acknowledged that her discipline included spanking C.M. and her own children with her hand and several times with a belt. Anna testified that she suggested counseling to Derek numerous times because she wanted the marriage to work and she was concerned about C.M.'s welfare.
Dr. Nicole Lanclos, a psychologist, testified that she had seen C.M. for mental health counseling beginning in July 2008. Dr. Lanclos stated that all of her information was obtained from conversations with C.M. and Derek and that she had not *322 spoken with Anna. Dr. Lanclos testified that she was not qualified to comment on whether Anna was at fault in the termination of the marriage. Dr. Lanclos stated that C.M. said she felt ignored in the house.
In order to meet her burden of proof, Anna testified that she cared about C.M. and wanted the marriage to work. Anna stated that she told Derek she needed help in caring for C.M. and suggested that they all participate in family counseling. Anna acknowledged that she criticized C.M.'s behavior and had difficulty communicating with her, but she did not agree with Derek's decision to send the child to his parents' house.
Although the trial court found Derek credible, his testimony did not support the court's finding that Anna's treatment of C.M. constituted fault sufficient to preclude an award of final periodic support. Derek acknowledged that Anna did not verbally or physically abuse him and she did not abandon the marriage. At trial, Derek asserted that Anna was mean and abusive to C.M. However, he gave few specifics, stating vaguely that Anna physically abused C.M. in December 2007 and January 2008. Derek stated that he was concerned about Anna's treatment of C.M. because on one occasion he asked Anna to say something positive about C.M., but Anna told him that she did not like the way C.M was acting and would not make a positive comment to the child. We note that Derek admitted he would have sought a divorce even if there had been no conflict between C.M. and Anna. Thus, the record does not support a finding that Anna's treatment of the child was an independent cause of the breakup.
In addition, the trial court erred in stating that the applicable standard of fault was "defined" in LSA-C.C. art. 112. Since Article 112 does not contain a definition of fault, we cannot say what standard of fault the court applied in reaching its decision. As previously stated, the fault necessary to preclude permanent support is serious misconduct, such as the commission of a felony, or a continued pattern of mental harassment, nagging and griping directed at the other spouse. The court's determination of fault was primarily based on a finding that Anna verbally abused the child. However, the one example of such abuse cited by the court was a statement which Anna made to Derek, not to the child. Thus, the court's finding of a pattern of verbal abuse as the basis of fault is not supported by the record.
Rather, the evidence presented demonstrates that Anna was the person caring for C.M. and the other children on a daily basis and that although Anna was not blameless in the marital discord, the incidents complained of regarding her conduct toward Derek and C.M. did not rise to the level of fault sufficient to preclude an award of final periodic support. Consequently, we must conclude that the trial court was clearly wrong in finding that Anna was at fault in the dissolution of the marriage. In reaching this conclusion, we now consider whether the claimant spouse is in need of an award of final periodic support.
Anna contends the trial court erred in failing to award her final periodic support. Anna argues that she is entitled to such an award based on her needs and Derek's ability to pay.
When a spouse has not been at fault and is in need of support, based on the needs of that party and the other party's ability to pay, that spouse may be awarded final periodic support. The court shall consider all relevant factors in determining the amount and duration of support, including the income, financial obligations and earning capacity of the parties, their health and *323 age and the duration of the marriage. LSA-C.C. art. 112.
In an action for spousal support, the claimant spouse has the burden of proving insufficient means of support. Expenditures for gifts, recreation or vacation are not considered in determining the necessary expenses of the claimant spouse. Cooper v. Cooper, 31,875 (La.App.2d Cir.5/5/99), 737 So.2d 173; Prestenback v. Prestenback, 08-0457 (La.App. 1st Cir.11/18/08), 9 So.3d 172.
In his appellate brief, Derek asserts that Anna was not in need because she obtained approximately $35,000 from a home equity loan after the couple's separation. However, we note that Anna used a portion of the loan proceeds to replace property which Derek had removed from the marital home, including furniture, beds, a lawnmower, cookware and linen. Since the loan represented a debt, the proceeds will not be considered as income to Anna. Nor will her repayment of the loan be considered an allowable expense.
At the time of the hearing, Anna was 47 years old and was employed as a teacher, the same job she held during the 4-year marriage. She testified that her net income was $2,300 per month and that her monthly mortgage payment was $550. Anna submitted the following list of monthly expenses:

 Housing $1,000.00
 Food 250.00
 Household supplies 150.00
 Drug bills 50.00
 Dental care 20.00
 Doctor bills 30.00
 Utilities:
 Gas 300.00
 Electricity 300.00
 Water 80.00
 Telephone 185.00
 Insurance 300.00
 Clothing 150.00
 Laundry & cleaning 100.00
 Grooming & personal items 50.00
 Recreation and special lessons 100.00
 Vacation 100.00
 Gifts 200.00
 Auto expense 300.00
 Income tax/accounting fees 20.00
 TOTAL $3,685.00

In reviewing the expenses, we find that the amounts for vacation, recreation and gifts should not be included in the calculation of spousal support, since they are not directly related to Anna's needs. The house note is $550, the amount stated in the testimony. Additionally, a number of claimed expenses should be reduced to a reasonable amount, so the clothing expense is reduced to $100, the telephone expense is reduced to $100, the laundry/cleaning expense is reduced to $50 and the expense for personal care items is reduced to $25. We find the other claimed expenses to be reasonable in light of the relevant factors in this case. Thus, Anna has allowable expenses of $2,625 per month. Since Anna's expenses exceed her monthly income by the amount of $325, the record demonstrates that Anna is in need of support.
Based upon the evidence contained in the record, Derek has the ability to pay spousal support. At the time of the hearing, Derek was approximately 45 years old. Derek testified that although he was physically healthy, he voluntarily stopped working in April 2007 and since that time his income has been derived from dividends and savings. We agree with a previous finding of the district court that Derek has the capacity to substantially increase his earnings and that a monthly income of $4,250 ($51,000 annually) is reasonably attributable to him for the purpose of calculating spousal support. Considering the parties' income, expenses, earning capacity, health, age and the duration of their marriage, we conclude that Anna Martin is entitled to an award of final periodic support *324 in the amount of $325 per month for the period of 18 months.

CONCLUSION
For the foregoing reasons, that portion of the trial court's judgment finding Anna Martin at fault and denying final periodic support is reversed, and the judgment is otherwise affirmed. Judgment is hereby rendered ordering Derek Martin to pay Anna Martin final periodic support in the amount of $325 per month for the period of 18 months. Costs of this appeal are assessed to Derek Martin.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.

ON REHEARING
Before WILLIAMS, STEWART, GASKINS, PEATROSS and LOLLEY, JJ.
PER CURIAM.
We grant rehearing for the limited purpose of setting a date for commencement of the periodic support payments. The judgment of this court is amended to provide that Derek Martin is ordered to pay Anna Frederick Martin final periodic support in the amount of $325 per month, with payments to begin on the first day of May 2010, and payable on the first day of each subsequent month for a period of eighteen (18) consecutive months. In all other respects, the application for rehearing is denied.
REHEARING GRANTED IN PART AND DENIED IN PART.